UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGANETTIE KAYE GOTT** | ) | **Case Number** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL COMPLAINT** |
| | ) | |
| **IQ DATA INTERNATIONAL, INC.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant** | ) | |
| | ) | |

## COMPLAINT AND JURY DEMAND

**COMES NOW,** Plaintiff, Anganettie Kaye Gott, by and through her undersigned

counsel, Brent F. Vullings, Esquire of Warren & Vullings, LLP, complaining of

Defendant, and respectfully avers as follows:

### I.     INTRODUCTORY STATEMENT

1.      Plaintiff, Anganettie Kaye Gott, is an adult natural person and brings this

action for actual and statutory damages and other relief against Defendant for violations

to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.

### II.     JURISDICTION

2.      Jurisdiction of this court arises under 15. U.S.C. § 1692k(d) and 28 U.S.C.

§1337.

3.      Venue in this District is proper in that the Defendant conducts business in

the District and maintains a registered office in this District.

### III.   **PARTIES**

4.      Plaintiff, Anganettie Kay Gott, is an adult natural person residing at 413 13th Avenue S., Onalaska,WI 54650.  At all times material and relevant hereto, Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a (2).

5.      Defendant, IQ Data International, Inc. ("Defendant"), at all times relevant hereto, is and was a corporation engaged in the business of collecting debt within the Commonwealth of Pennsylvania and the state of Wisconsin, with it's principal location located at 1000 SE Everett Mall Way, Suite 401, Everett, WA 98208 and a registered office located at 116 Pine Street, Ste 320, Harrisburg, PA 17101.

6.      Defendant is engaged in the collection of debts from consumers using the telephone and mail.  Defendant regularly attempts to collect consumer debts alleged to be due to another.  Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

### IV.   **FACTUAL ALLEGATIONS**

7.      In or around November, 2008, Plaintiff began receiving calls from Defendant's agent, "Mr. Harrison", looking for payment on a debt allegedly owed to Shurco Residential Properties.

8.      Defendant's agent, "Mr. Harrison", told the Plaintiff that he was calling in regards to account# 1441130 and that he could offer her a settlement of $3,000.00 on this account.

9.      Plaintiff informed Defendant's agent that she could not afford to send them that kind of money, since she had been out of work for sometime.

10.     Plaintiff offered to make small increment payments of fifty ($50) dollars toward the outstanding account.

11.     Defendant's agent, "Mr. Harrison", would not accept this amount.

12.     Defendant's agent stated that Plaintiff would be required to make at least five-hundred ($500.00) dollar payments toward this debt.

13.     Plaintiff again reminded Defendant's agent that she was unemployed and could not make payments like that.  Defendant's agent, threatened that if she failed to make them that he would get in touch with unemployment and ganish her wages.

14.     Over the next year, Defendant and their agent's continued to call Plaintiff at least five (5) to six (6) times daily trying to get payment on this matter.

15.     On one particular occasion, Plaintiff received seventeen (17) calls in one day from Defendant.

16.     Plaintiff answered after several calls and agent, "Mr. Harrison", scolded her, saying "wow, is that how many times I have to call you to get an answer".

17.     At that time, Plaintiff informed Defendant's agent, "Mr. Harrison", that she was moving out of state and that she would pay the debt when she was gainfully employed.

18.     Defendant's agent stated that the Plaintiff was a liar and that she was just trying to run from the debt.

19.     Defendant's agent, said that he would take further action to get the money.

20.     Plaitniff was told that Defendant would take her to court and when she stood in front of the judge he would put her in jail.

21.     Plaintiff was told that she was an "easy target".

22.     In or around October, 2009, Plaintiff contacted Defendant to try and clear up her debt, since she now was employed.

23.     At that time, Plaintiff spoke with Defendant's agent, "Stephanie Silva".

24.     Plaintiff asked for a letter of validation on the debt, but was denied by the agent.

25.     Defendant's agent, "Stephanie Silva", shouted at Plaintiff telling her that she didn't need validation, she just needed to get the debt paid off.

26.     Plaintiff was called a liar and a stupid bitch by Defendant's agent.

27.     Plaintiff then demanded to speak with agent's supervisor.

28.     Defendant's agent, "Shannon", then took over the call.  "Shannon" also declined to send the Plaintiff any form of validation on the debt.  Defendant's agent ended the call by hanging up on the Plaintiff.

29.     Around that same time, October, 2009, Plaintiff received a call from an operations manager of the Defendant, "Michael Branson", who told her that he was going to review the calls that she had with the previous agents.

30.     On that call, Plaintiff set up a payment schedule of $209.00 a month to start immediately for the month of November, 2009.

31.     Plaintiff made the initial payment, but had to cancel the December, 2009 payment due to a lack of funds.

32.     Plaintiff did however have seventy-five ($75.00) still taken from her checking account in December, 2009, even after calling and asking Defendant not to take the payment.

33.     Plaintiff called Defendant in December, 2009, and spoke with Defendant's agent, "Michael Branson", to check on why money would still have been debted out of her checking account.  Agent stated that they had no record in her file of her calling in to suspend the December, 2009 payment.

34.     Defendan's agent, "Michael Branson", stated that if she was not going to pay the debt that he would have to contact their legal department on this matter.

35.     Plaintiff was told that Defendant would continue to take the payments that she agreed upon.  Plaintiff ended the call.

36.     Plaintiff went on to close her checking account so that Defendant could not withdrawal any further money.

37.     The Defendant acted in a false, deceptive, misleading and unfair manner when they engaged in conduct the natural consequence of which is to harass, oppress or abuse such person in connection with the collection of a debt.

38.     The Defendant knew or should have known that their actions violated the FDCPA.  Additionally, Defendant could have taken the steps necessary to bring their and their agent's actions within compliance of the FDCPA, but neglected to do so and failed to adequately review those actions to insure compliance with the law.

39.     At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees, who were acting within the scope and course of their employment, and under the direct supervision and control of Defendant herein.

40.     At all times pertinent hereto, the conduct of Defendant as well as its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiff herein.

41.     As a result of Defendant's conduct, Plaintiff has sustained actual damages, including, but not limited to, injury to Plaintiff's reputation, invasion of privacy, damage to Plaintiff's credit, out-of-pocket expenses, physical, emotional and mental pain and anguish and pecuniary loss and she will continue to suffer same for an indefinite time in the future, all to her great detriment and loss.

### COUNT I - FDCPA

42.     The above paragraphs are hereby incorporated herein by reference.

43.     At all times relevant hereto, Defendant was attempting to collect an alleged debt which was incurred by Plaintiff for personal, family or household purposes and is a "debt" defined by 15 U.S.C. § 1692a(5).

44.     The foregoing acts and omissions constitute violations of the FDCPA, including, but not limited to, violations of:

§§ 1692d     Any conduct that natural consequence of which is to harass, oppress or abuse any person

§§ 1692d(2)  Profane language or other abusive language

§§ 1692d(5)   Caused the phone to ring or engaged any person in

telephone conversations repeatedly

§§ 1692e   Any other false, deceptive, or misleading representation or

means in connection with the debt collection

§§ 1692e(2)   Character, amount, or legal status of the alleged debt

§§ 1692e(5)   Threaten to take any action that cannot legally be taken or

that is not intended to be taken

§§ 1692e(10)   Any false representation or deceptive means to collect a

debt or obtain information about a consumer

§§ 1692f   Any unfair or unconscionable means to collect or attempt

to collect the alleged debt

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against the

Defendant, IQ Data International, Inc. for the following:

a.   Actual damages;

b.   Statutory damages pursuant to 15 U.S.C. § 1692k;

c.   Reasonable attorney's fees and litigation expenses, plus costs of suit;

d.   Such addition and further relief as may be appropriate or that the interests

of justice require.

## V.    **JURY DEMAND**

Plaintiff hereby demands a jury trial as to all issues herein.

**Respectfully submitted,**

**WARREN & VULLINGS, LLP**

**Date: March 5, 2010**          **By:  /s/Brent F. Vullings**
                    Brent F. Vullings, Esq.

                    Warren & Vullings, LLP
                    1603 Rhawn Street
                    Philadelphia, PA  19111
                    215-745-9800    Fax 215-745-7880
                    Attorney for Plaintiff